# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| RENAI M., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. CV 20-04476-DFM <br><br> MEMORANDUM OPINION AND ORDER |

## I. BACKGROUND

Renai M. ("Plaintiff") applied for Disability Insurance Benefits on January 25, 2017, and Supplemental Security Income on February 1, 2017, alleging disability beginning November 30, 2015. See Dkt. 17, Administrative Record ("AR") 163-77.[1] The claims were denied initially on April 24, 2017, after which Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on October 26, 2018. See AR 39-76, 98-110.

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Additionally, all citations to the AR are to the record pagination. All other docket citations are to the CM/ECF pagination.

The ALJ denied Plaintiff's claim by written decision on April 17, 2019. See AR 24-38. The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. See AR 30. At step two, the ALJ determined that Plaintiff had the severe impairments of "disorder of the spine and radiculopathy." Id. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See AR 30-31.

Before reaching step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with various limitations, including that she could stand and/or walk for two hours at most and sit for six hours at most in an eight-hour workday. See AR 31. At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. See AR 33. At step five, the ALJ relied on the testimony of a vocational expert to conclude that someone with Plaintiff's RFC could perform jobs that exist in the national economy, including telephone information clerk (Dictionary of Occupational Titles or "DOT" 237.367-046), document preparer (DOT 249.587-018), and lens inserter (DOT 713.687-026). See AR 34-35. Accordingly, the ALJ denied benefits. See AR 35.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 12-15. This action followed. See Dkt. 1.

## II.   LEGAL STANDARD

A district court will set aside a denial of Social Security benefits only if the decision "contains legal error or is not supported by substantial evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted). "Substantial evidence means more than a mere scintilla, but less than a

preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (citations and internal quotation marks omitted). The substantial evidence threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 1157 (2019). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). A court may affirm the ALJ's decision even if the ALJ made an error, so long as the error was harmless, meaning it was "inconsequential to the ultimate nondisability determination." Tommasetti, 533 F.3d at 1038 (citation omitted).

## III.   DISCUSSION

The sole dispute is whether the ALJ properly considered Plaintiff's subjective symptom testimony. See Dkt. 20, Joint Stipulation ("JS") at 4.

Plaintiff testified at the hearing as follows. Plaintiff stopped working due to issues with her back and pain. See AR 53. She cannot lift anything over ten pounds and most activities put pressure and strain on her back. See AR 55. Plaintiff can stand for ten to fifteen minutes before needing to change position and can walk two or three blocks without discomfort. See AR 55-56. Plaintiff also experiences pain in her knees and thighs. See AR 56. She can do light cleaning, cook, and go grocery shopping, but needs help lifting heavy items. See AR 60-61. Plaintiff's pain is sometimes a ten out of ten. See AR 63. She often relies on a cane for mobility, although no doctor prescribed one. See AR 63-64. Plaintiff has been receiving pain shots in her back and wants to return to physical therapy. See AR 65-66.

The ALJ applies a two-step analysis to assess a claimant's credibility for symptom severity. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). Once the claimant "has presented objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other symptoms alleged," then, absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. This standard is "the most demanding required in Social Security cases." Id.

      Here, the ALJ determined that Plaintiff's testimony was "not entirely consistent with the medical evidence," finding that, although her spinal impairments produced significant pain and signs of restricted motion, "treatment with physical therapy, home exercises, and epidural injections improved claimant's functionality." AR 32. This is a clear and convincing reason to discredit Plaintiff's testimony and is supported by substantial evidence. See Warre v. Comm'r of SSA, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for . . . benefits.").

      In support, the ALJ pointed to Plaintiff's progress notes from California Sports and Spine Center. See AR 32. On December 4, 2017, Plaintiff received a transforaminal epidural steroid injection. See AR 288. In visits on December 11, 2017, and January 9, 2018, Plaintiff reported no new symptoms, that she was stable on her current pain regimen, which reduced her symptoms, and that she could "function well" while taking her pain medications, with no side effects. See AR 284-86. The ALJ also cited to Plaintiff's progress notes from her physical therapy sessions with Ilya Kaminsky, which showed consistent improvement. See AR 32. When Plaintiff first saw Kaminsky in August 2017, she reported a pain rating of ten out of ten and that she had "quite a bit of difficulty" or was "unable to do" various activities, such as performing housework or attending social events. See AR 336. Progress notes throughout Plaintiff's treatment showed gradual improvement, aside from a fall in September 2017. See AR 303 (noting improvement), 304 ("[Plaintiff] states

feeling stable level of pain today."), 307 ("[Plaintiff] stated she no longer has difficulty getting in/out of bed."), 311 ("[Plaintiff] has improved in functional status," with "pain at the level of 6/10 compared to 10/10 initially."), 313 (noting improvement). And by December 2017, Plaintiff reported a pain rating of three out of ten, improvement in her endurance, gait, and ability to tolerate daily activities, among other things, and that she now had only "some" or "mild" difficulty with various activities. See AR 295-97. In an attached progress report, Kaminsky wrote that Plaintiff was able to go through her day with less pain and complete more activities of daily living. See AR 296.

    Plaintiff does not explicitly dispute these findings. Instead, Plaintiff primarily objects to reasoning that the ALJ did not rely on, or in some cases, did not employ at all. For example, Plaintiff takes issue with the ALJ's introductory boilerplate, which included the statement that the objective evidence was not consistent with the allegations. See JS at 7-8. But "[t]he use of this generic language is not itself reversible error," Trevizo, 871 F.3d at 678 n.6, and the ALJ did not stop there. Plaintiff also spends several pages refuting the idea that she received "conservative treatment," given that she received epidural steroid injections. See JS at 9-11. The ALJ, however, made no such finding. To the contrary, the ALJ specifically noted Plaintiff received the injections after six weeks of "'conservative' management" with physical therapy and opioids. AR 32. Later in the briefing, Plaintiff contends that any suggestion that her allegations are inconsistent with her daily activities is belied by the record. See JS at 12-13. Again, the ALJ did not make this finding.

    Plaintiff's only relevant objection is that any statements of her improvement "must be interpreted with an awareness that improved functioning while being treated does not always mean that a claimant can function effectively in a workplace." JS at 11. But as the ALJ reasonably pointed out, Plaintiff's improvements, which included much less pain, only

"some" or "mild" difficulty with most activities, and better trunk flexion and extension, suggested a greater capacity for physical exertion and the ability to perform work-related activities consistent with sedentary work. See AR 32-33. Plaintiff does not otherwise explain why she would be unable to perform any level of work, despite these improvements.

Accordingly, the ALJ did not err in rejecting Plaintiff's testimony.

## IV. CONCLUSION

The decision is the Social Security Commission is AFFIRMED and this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Date: May 5, 2021

DOUGLAS F. McCORMICK
United States Magistrate Judge